### In re MOTEL ASSOCIATES OF CINCINNATI d/b/a Ramada Inn East and Airhart's Restaurant, Debtor.

**Bankruptcy No. 84 B 10814 (TLB).**

United States Bankruptcy Court,
S.D. New York.

June 13, 1985.

Harris D. Leinwand, New York City, for debtor.

## MEMORANDUM DECISION AND ORDER ON APPLICATION TO CONFIRM PLAN

TINA L. BROZMAN, Bankruptcy Judge.

The debtor moves for confirmation of its Chapter 11 plan of reorganization asserting that it has obtained the requisite acceptances of its unsecured creditors pursuant to 11 U.S.C. § 1126(c). Owen and Von Fischer, an unsecured creditor, by a letter hand delivered to the court on the day prior to the hearing on confirmation, purports to reject the plan and to object to its confirmation. In order to find that the plan had been accepted by the unsecured creditors, the court would have to disallow the timely vote of Ramada Inns, Inc. and disallow the purported votes of two unsecured creditors who apparently forwarded their ballots to Owen and Von Fischer's counsel for transmittal to the court, which counsel did not transmit them.

### FINDINGS OF FACT

1. On May 30, 1984, Motel Associates of Cincinnati filed with this court its voluntary petition for reorganization pursuant to Chapter 11, of title 11, United States Bankruptcy Code (the "Code") and was thereafter authorized to continue the operation and management of its business.

2. Prior to its bankruptcy, the debtor, a limited partnership, was engaged in the business of operating a Ramada Inn Motel located at 4056 Mt. Carmel, Tobasco Road, Union Township, Ohio (the "Motel").

3. On January 29, 1985, the debtor entered into a stipulation, approved by this court on January 31, 1985, pursuant to which Beck-Carroll, Inc. ("B–C") is operating the Motel under a long-term lease and is making rental payments to the debtor sufficient to enable the debtor to pay its mortgage and certain priority obligations (the "Order of Approval").

4. The Order of Approval authorized the debtor to enter into an agreement of settlement with B–C and the Beck Group of Clermont County which agreement provides, at paragraph 22 thereof, that the debtor will assign to B–C a certain franchise agreement with Ramada Inns, Inc. ("Ramada").

5. Consistent with the agreement of settlement, the debtor's plan of reorganization provides that the debtor assumes and assigns to B–C that certain franchise agreement with Ramada dated December 29, 1982 and running from February 24, 1983 to February 24, 2003. The plan further provides that unsecured creditors are to receive 10% of their allowed claims within 60 days after confirmation in satisfaction of the partnership's debts and that the debtor's general and limited partners are to retain their interests in the debtor.

6. By order entered April 17, 1985, this court approved the debtor's Third Amended Disclosure Statement, fixed June 4, 1985 as the last day to file with the clerk of the court written acceptances or rejections of the plan and fixed June 4, 1985 as the last day to file with the clerk of the court any objection to confirmation of the plan.

7. On June 4, 1985, the debtor filed with the Court its Certification of Acceptances of the plan.

8. Only one priority creditor filed a ballot with respect to the plan. That creditor accepted the plan.

9. General unsecured creditors (class 4) filed 7 ballots. The claims of those creditors aggregate $3,312.59. Of these credi-

tors, six accepted the plan. The claims of those six aggregate $2,439.55. One creditor with a claim of $873.00 rejected the plan. An eighth creditor indicated that it was neither accepting nor rejecting the plan but would "agree to accept payments in the manner directed by the majority of the creditors...."

10. Ramada, which had filed a proof of claim as an unsecured creditor, purported to reject the plan. It did not object to confirmation of the plan, pursuant to which its executory contract is to be assumed and assigned to B–C.

11. By letter dated June 10, 1985 and delivered to the court, counsel for Owen and Von Fischer [formerly Owl Productions ("Owl")], an unsecured creditor, purported to object to confirmation of the plan. Counsel alleged that Owl did not receive a ballot or disclosure statement. He also alleged that the creditors' committee (of which Owl is a member) had informed the debtor in February, March and May, 1985 that the 10% distribution proposed was unacceptable. Included with this letter was a copy of a cover letter dated June 7, 1985 from Owl's Ohio counsel, John Mueller, Esq. which enclosed five documents:

(i) a letter from Superior Janitor Supply ("Superior") dated May 21, 1985 addressed to Mueller which noted that Superior rejects the debtor's plan;

(ii) a letter from the Plant Trolley ("PT") dated May 23, 1985 addressed to Mueller stating that PT "did not receive any correspondence from Motel Associates, Inc. or the courts about their recent proposal of payment" and stating that "[t]his offer is absolutely unacceptable to our company;"

(iii) a letter dated May 23, 1985 from Owl addressed to the clerk of this court stating that Owl "did not receive any documents regarding the recent proposal" and that "by this letter we are recording our *objection* to such proposal" (emphasis in original);

(iv) an undated ballot from Kellogg Dry Cleaners, Inc. ("Kellogg") rejecting the plan; and

(v) a ballot from Cincinnati Gas & Electric Company ("CG & E") dated May 15, 1984 (which should probably be 1985) rejecting the plan.

12. For reasons best known to Mueller, none of these documents was filed with the court on or before June 4 or even thereafter. They first emerged as photocopies included with the letter to the court dated June 10, 1985. It would appear from the correspondence supplied to the court that these documents were held by Mueller until June 7, 1985, some three days after the last day to file ballots and objections to confirmation, at which time Mueller mailed them all to Owl's New York counsel, who promptly delivered the copies to the court.

13. The claims filed by Ramada and the five creditors whose purported rejections of the plan came via Owl's counsel are set forth below:

| Name of creditor | Amount of proof of claim(s) | Amount of debt scheduled by the debtor |
| --- | --- | --- |
| CG&E | $ 6,682.05 2,077.27 | $ 4,491.13 |
| Kellogg | 2,701.12 | 3,500.54 |
| Owl | 10,317.06 | 9,708.25 |
| PT | – – – | 928.26 |
| Ramada | 7,018.55 | – – – |
| Superior | – – – | 612.65 |

14. Prior to the hearing on confirmation, the debtor's counsel filed with the court an affidavit indicating that service of the solicitation package and ballot was duly made on both Owl and PT, among other persons, at the addresses which each had designated in its proof of claim.

15. None of PT, Kellogg, CG & E nor Superior appeared at the hearing on confirmation. Owl's New York counsel in his letter to the court stated that he declined to appear at the hearing and requested that the court consider his letter "a formal objection to confirmation of the plan".

16. No evidence was offered at the hearing on confirmation (nor was the suggestion made in the correspondence received from Owl's counsel) that the addresses to which the solicitation package and ballot were sent to Owl and PT were

incorrect or were ever changed by notice in writing given to both or either of the debtor and the court. Significantly, the court notes that the solicitation package and ballot were sent to Owl directed to Stephen Laber, Suite 805 Gwynne Building, 602 Main Street, Cincinnati, Ohio 45202, as agent of Owl, and that this address, including suite number, is identical to the address of Owl's Ohio counsel.

17. Owl did not claim in the letter from its New York counsel that it learned of the confirmation hearing and other dates set by the court too late to timely file a rejection and objection to confirmation of the plan. Indeed, inasmuch as one ballot apparently forwarded to Mueller bore the date May 15, 1985, the letters from Superior, PT and Owl itself bore the dates May 21, May 23 and May 23, 1985, respectively, and further, inasmuch as the solicitation package and ballot mailed to Owl were sent to the same address as the location of Owl's Ohio counsel, the court can reasonably infer that Owl knew of the dates set by the court well in advance of June 4, the last day to vote on and object to confirmation of the plan.

18. At the hearing on confirmation, the debtor, in a footnote to its certification of acceptance, asked this court to disallow Ramada's vote because, in the debtor's view, Ramada, as the holder of an executory contract which is to be assumed pursuant to the plan, is not a creditor entitled to vote. It does not appear that the debtor gave any notice to Ramada that its vote would be challenged nor did the debtor object to Ramada's claim by a writing served on Ramada as provided in Rule 3007 of the Federal Rules of Bankruptcy Procedure. It also does not appear that the debtor gave notice to CG & E or to Kellogg that their ballots, since not filed with the court, were being challenged. Owl's New York counsel was apprised that the debtor intended to seek confirmation of its plan on the scheduled date.

19. Were this court to allow Ramada's vote to stand, the debtor would not have obtained the requisite dollar amount in claims for an acceptance of its plan by Class 4. Similarly, were the court to find that the ballots cast by either or both of CG & E and Kellogg should be counted because they may have been misled or may have reasonably believed that the ballots had been cast and because the debtor may have been on notice of the two creditors' rejection of its plan, the debtor would not have obtained the requisite dollar amount in claims for an acceptance of its plan by Class 4.

## CONCLUSIONS OF LAW

1. If Class 4 does not accept the debtor's plan, the plan cannot be confirmed since it fails to meet the fair and equitable test under 11 U.S.C. § 1129(b).

2. Particularly where a disputed vote could control the outcome of balloting, it is inappropriate to disenfranchise a creditor who has duly filed a ballot rejecting a plan without notifying the creditor in advance of the hearing on confirmation that its vote would be challenged at that hearing.

3. Pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure, a plan may be accepted or rejected by any creditor whose claim is deemed allowed pursuant to § 502 of the Code. After notice and a hearing the court may temporarily allow a claim to which an objection is interposed in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

4. Pursuant to § 502(a) of the Code, a claim, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest objects.

5. Having filed a proof of claim to which no party objected, Ramada's claim should be deemed allowed unless, at a hearing on notice to Ramada, the debtor can demonstrate that Ramada has no "claim" within the meaning of § 101(4) of the Code.

6. Owl is not entitled to have its attempted late vote counted as a rejection of the plan on the grounds that inadequate

notice was given. *See In re Salem Bank Building Limited Partnership*, 40 B.R. 574 (Bankr.W.D.Va.1983) (creditor not entitled to vote on reorganization plan, although creditor contended he never received copies of plan or ballot, where creditor was originally listed at a certain address, all notices were mailed to that address, no notices were returned to the Bankruptcy court or debtor's counsel, no change of address was ever filed by the creditor or his counsel with the Bankruptcy court or with debtor's counsel, and creditor appeared by counsel at the hearings on the disclosure statement and on confirmation of the plan.)

■ 7. No objection to confirmation of the plan was timely made by Owl pursuant to Rule 3020 of the Federal Rules of Bankruptcy Procedure. However, the court must be satisfied that the plan has been accepted by Class 4, an impaired class in accordance with 11 U.S.C. § 1126(c). Since the court is not, on the record presently before it, so satisfied, it will treat Owl's letter as an application for an order to show cause whether the plan has been accepted.

8. Accordingly, let the debtor, the United States Trustee, Ramada, Owl, PT, Kellogg, Superior & CG & E show cause on the 20th day of June, 1985 at 2:30 p.m. in Room 236, United States Courthouse, 40 Foley Square, New York, New York why an order should not be entered:

(i) disallowing Ramada's vote;

(ii) disallowing consideration of the ballots of CG & E and Kellogg which were not filed with the court;

(iii) disallowing consideration of the letters from PT and Superior which were not filed with the court and purported to reject the plan; and

(iv) finding that the plan has been accepted pursuant to 11 U.S.C. § 1126.

IT IS SO ORDERED. Notice of entry of this order shall be served by the debtor by hand or express mail within two days of the order's entry upon the United States Trustee, Ramada, Owl, PT, Kellogg, Supe-

rior, CG & E and the Committee of Unsecured Creditors.