**In re Barry GOLDSTEIN, Debtor.**

**Bankruptcy No. 89–10127S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 24, 1990.

Marvin Krasny, Philadelphia, Pa., for debtor.

Mark S. Kenney, Philadelphia, Pa., for Fidelity Bank, Nat'l Assn.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa., U.S. Trustee.

Bradford J. Lam, Philadelphia, Pa., for Coray Management.

Robert T. Cohen, Philadelphia, Pa., for Germantown Sav. Bank.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

In order to decide whether we can confirm the Debtor's Second Amended Plan of Reorganization ("the 3rd Plan") at this time, we must determine whether it is appropriate for us to disregard the vote of the Debtor's largest unsecured creditor rejecting the 3rd Plan because the Debtor's Objection to that claim, filed during the pendency of the voting period, had not yet been resolved as of the date of the confirmation hearing. We decline the Debtor's invitation to hold that the creditor's failure to expressly request that its claim be allowed for purposes of voting pursuant to Bankruptcy Rule ("B.Rule") 3018(a) requires that we not count the creditor's vote. Rather, we decide that it is appropriate to delay confirmation until we determine the merits of the objection to the creditor's claim at a hearing scheduled in the near future.

BARRY GOLDSTEIN, the Debtor ("the Debtor"), is a practicing attorney and a former principal of New York City Shoes, Inc. ("NYC Shoes"). NYC Shoes was a spectacularly successful retailer of women's shoes from 1982 until 1986, when it collapsed in the face of managerial disputes among its four principals, one of whom was the Debtor, and securities litigation filed against it. *See In re New York City Shoes, Inc.,* 84 B.R. 947, 950–53 (Bankr.E. D.Pa.1988). The Debtor filed his instant individual Chapter 11 case on January 10, 1989.

After presenting two prior Plan drafts which were not consummated, the Debtor, on March 7, 1990, proposed the 3rd Plan. The terms of the 3rd Plan were reportedly negotiated between the Debtor and several banks which are unsecured creditors. Pursuant to the terms of the negotiated 3rd Plan, the Debtor was to cash out his interest in a building which his former law firm was selling and pay the sale proceeds to his general unsecured creditors *pro rata.* The only designated class of creditors other than general unsecured creditors in the 3rd Plan were unsecured creditors whose claims arose out of dealings with NYC Shoes stock. The Debtor, invoking 11 U.S.C. § 510(b), sought to subordinate the claims of these creditors to the claims of general unsecured creditors, which would result in no distribution to the said parties.

The Debtor apparently did not negotiate the terms of the 3rd Plan with Coray Management, Inc. ("Coray"). In February, 1990, Coray, previously the owner of three unsuccessful NYC Shoes franchises, filed an unsecured claim in the amount of $750,-000 for losses which it attributed to, *inter alia,* improper actions of the Debtor. The amount of this claim was almost double the sum of the other general unsecured claims filed, including those of the banks.

Coray objected to the Debtor's First Amended Disclosure Statement because it believed that the accompanying First Amended Plan classified it as a NYC Shoes stock-sale creditor and hence as subordinated. In its Second Amended Disclosure Statement, the Debtor clearly classified Coray as a general, as opposed to a subordinated, unsecured creditor, but ominously stated that the Debtor "disputes any liability to Coray, will object to the allowance of said claim and will seek to either have it disallowed or subordinated."

Our Order approving the Second Amended Disclosure Statement, entered on March 19, 1990, required that all votes on the plan and objections to its confirmation be submitted and filed, respectively, on or before April 27, 1990, and that the confirmation hearing be held on May 3, 1990. On April 11, 1990, the Debtor filed an objection to Coray's claim. A hearing on the Objection was scheduled on May 23, 1990. Coray predictably voted against the plan. If its ballot were counted, no class would have accepted the 3rd Plan, since the subordinated class was deemed to have rejected it because no payment would be made to its members. 11 U.S.C. § 1126(g). Therefore, the 3rd Plan could not have been confirmed pursuant to, *inter alia,* 11 U.S.C. § 1129(a)(10), if Coray's vote were counted.

However, the Debtor attempted to avoid the result of denial of confirmation by arguing that Coray's ballot should not be counted, and filed a Memorandum of Law prior to the confirmation hearing supporting his position.

■ The Debtor's argument was based upon 11 U.S.C. §§ 1126(a) and 502(a). The former section provides that only a claimant whose claim is "allowed under section 502 of this title may accept or reject a plan." Section 502(a) provides that a claim is "deemed allowed, unless a party in interest, ... objects." Since he *did* object to Coray's claim, the Debtor argues that Coray's claim must be deemed disallowed for purposes of voting.

The Debtor finds reinforcement for his reasoning in B.Rule 3018(a), which provides, in pertinent part, as follows:

(a) **Persons Entitled to Accept or Reject Plan; Time for Acceptance or Rejection.** A plan may be accepted or rejected by the following entities within the time fixed by the court pursuant to Rule 3017: (1) any creditor whose claim is deemed allowed pursuant to § 502 of the Code or has been allowed by the court; ... Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

Invocation of the procedure established in the last sentence of B.Rule 3018(a) by Coray, presumably on its motion, was, according to the Debtor, a prerequisite for Coray's claim to be "temporarily allowed" and hence eligible to support a vote. Since Coray filed no such motion, the Debtor argued that Coray's vote should not be counted.

Armed with his supporting Memorandum, the Debtor's counsel expressed cocksureness about the correctness of his position. When confronted with skepticism by this court about the equities of this argu-

ment, counsel cautioned this court not to reward Coray's counsel for his purported ignorance of the theory concerning the operation of B.Rule 3018(a) propounded by the Debtor.

■ The Debtor's counsel also suggested that Coray's own interest would not be served by rejection of the 3rd Plan because, if Coray succeeded in establishing the merits of its claim in the face of the Debtor's objection to it, Coray would receive a dividend. In light of this comment, we urged the parties to attempt to resolve their differences. In the event that they failed, we continued the hearing on Coray's objection, which the parties agreed entailed some discovery, until June 13, 1990 (and thereafter to July 5, 1990), and gave Coray until May 18, 1990, to respond to the Debtor's Memorandum.[1]

■ In its response, Coray argued several objections to confirmation of the Debtor's plan. However, no objections to confirmation *per se* have ever been filed by Coray. Moreover, had such objections been filed at the time of the filing Coray's Memorandum of Law, they would have been untimely. Therefore, these objections cannot be considered. *See* B.Rule 3020(b)(1); and 8 COLLIER ON BANKRUPTCY, ¶ 3010.04[1], at 3020–5 to 3020–6 (15th ed. 1990). *Cf. In re Szostek*, 886 F.2d 1405, 1412 (3d Cir.1989) (Chapter 13 case).

Our skepticism of the correctness of the Debtor's position arises for several reasons. Firstly, it seems unfair to allow a debtor to disenfranchise even a large creditor from voting on a plan merely by its unilateral act of filing an objection to the creditor's proof of claim. Secondly, the pertinent statute and rules do not directly support the reading urged by the Debtor. To reach this result, we would be obliged to interpret 11 U.S.C. § 502(a) as stating that, if a party objects to a claim, then it must be deemed disallowed. This Code section does not say that. It merely states that if a claim is *not* objected to, then it must be

---

1. On May 23, 1990, the Debtor saw fit to submit an unsolicited Reply Memorandum to the remittance of Coray. This practice of making submissions additional to those pursuant to court

orders is disfavored and may subject counsel to sanctions. *See In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr.E.D.Pa.1987), *aff'd,* 87 B.R. 333 (E.D.Pa.1988).

deemed *allowed.* We would also be obliged to read the last sentence of B.Rule 3018(a) as precluding allowance of a claim subject to objection unless the claimant files a motion to obtain temporary allowance of the claim. The Rule does not say that. It merely provides that if, for *any* reason, *any* party *or* the court wishes to determine whether a claim subject to objection should be temporarily allowed for purposes of voting, a notice and hearing is first required.

One court has apparently read 11 U.S.C. § 502(a) and B.Rule 3018(a) as the Debtor proposes they should be. *See In re M. Long Arabians,* 103 B.R. 211, 215–16 (Bankr. 9th Cir.1989). However, while affirming the decision of the trial court disallowing the claimant's vote, the Bankruptcy Appellate Panel ("the BAP") in *Long Arabians* reversed a bankruptcy court decision disallowing that same claimant's objections to confirmation on their merits. Thus, the *Long Arabians* court was apparently influenced by the fact that the claimant, while disenfranchised, was not silenced. Here, because Coray's objections to confirmation were not properly filed, disenfranchising Coray will silence it. While a creditor who fails to meet time deadlines may properly be silenced, this disposition seems very harsh here, given Coray's diligence in monitoring the Debtor's case.

The other cases cited by the Debtor on this point, *In re Orosco,* 77 B.R. 246 (Bankr.N.D.Cal.1987), *aff'd,* 93 B.R. 203 (Bankr. 9th Cir.1988); and *In re Gardinier, Inc.,* 55 B.R. 601 (Bankr.M.D.Fla.1985), provide even less support for his position than *Long Arabians. Orosco* merely holds that a debtor's filing of an objection to a creditor's claim after the voting does not reflect a waiver of the right to challenge the creditor's ability to vote. However, the *Orosco* court provided the creditor with an "ample opportunity" to argue the merits of its claim, and disenfranchised the creditor only after concluding that its claim could not be sustained on its merits. 77 B.R. at 250–52. In *Gardinier,* the court invoked B.Rule 3018(a), despite the absence of a motion, under that rule, by any party, and, considering the nature of the claim and its relationship to the success of the debtor's plan, exercised its discretion to disenfranchise the creditor. 55 B.R. at 604–05.

Neither *Orosco* nor *Gardinier* support the principle that a claimant can be disenfranchised by the mere fact that it fails to file a motion under B.Rule 3018(a), as the Debtor argues here. Instead, both decisions provide that the bankruptcy court must exercise its discretion, considering all relevant substantive factors, in determining whether it will allow a creditor to vote. They do not support the Debtor's argument that the solely procedural issue of whether the creditor filed a B.Rule 3018(a) motion is decisive.

Other decisions support a different reading of the impact of 11 U.S.C. § 502(a) and B.Rule 3018(a) than that urged by the Debtor. In *In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985), the Ninth Circuit Court of Appeals affirmed a district court holding that a bankruptcy court is obliged to estimate a contested claim before plan feasibility can be determined. This holding, by a court whose decisions control those of the BAP which decided *Long Arabians,* suggests that this court is *required* to at least estimate, if not determine, the disputed claim of Coray if the validity of same is crucial to confirmation, irrespective of whether Coray has filed a motion under B.Rule 3018(a).

In *In re Amarex, Inc.,* 61 B.R. 301, 302–03 (Bankr.W.D.Okla.1985), the court, while noting the impracticality of invoking B.Rule 3018(a) to estimate all disputed claims for voting purposes in a large case, simply allowed all of the holders of disputed claims to vote. Certainly, this result is inconsistent with the conclusion that a creditor whose claim is subject to an objection must invoke B.Rule 3018(a) to avoid disenfranchisement.

Finally, the court's reasoning in *In re Motel Associates of Cincinnati,* 50 B.R. 196 (Bankr.S.D.N.Y.1985), a case relied upon heavily by *Coray,* is antithetical to the Debtor's hypotheses. In refusing to recognize the Debtor's objections, at confir-

mation, to the claims of voting creditors, the court stated, *id.* at 199, as follows:

Particularly where a disputed vote could control the outcome of balloting, it is inappropriate to disenfranchise a creditor who has duly filed a ballot rejecting a plan without notifying the creditor in advance of the hearing on confirmation that its vote would be challenged at that hearing.

The Debtor argues that its warning to Coray that it would object to its claim in the Second Amended Disclosure Statement, and the presence of B.Rule 3018(a) as a potential tool for Coray to obtain temporary allowance of its claim, constituted sufficient notice to Coray of the challenge to its vote which transpired at the confirmation hearing. We disagree. The Debtor does not so much as hint, in the Disclosure Statement, that Coray may be disenfranchised by his contemplated objection to its claim.

In sum, we refuse to read B.Rule 3018(a) as placing an affirmative duty upon Coray to act or lose its vote. Rather, we perceive B.Rule 3018(a), as do the *Pizza of Hawaii, Motel Associates, Gardinier,* and *Amarex* courts, as a tool which the court or any party can invoke to expedite confirmation when numerous objections to claims cloud the issue of creditors' rights to vote. *Accord,* 8 COLLIER *supra,* ¶ 3018.03[5], at 3018–10 (15th ed. 1990) ("The court, however, regardless of the circumstances, has the discretion to allow or disallow all or part of the claim for voting purposes.").

■ Further, we are not inclined to employ the "temporary allowance" tool here. The instant case is a small Chapter 11 case. The relatively slow pace of the case, despite our efforts to induce greater dispositional speed upon the Debtor and his counsel throughout, suggest that no particular urgency surrounds confirmation of the 3rd Plan such as would require the employment of the "temporary allowance" process of B.Rule 3018(a). A plenary hearing on the validity of Coray's claim is scheduled on July 5, 1990. It appears both in keeping with due process of law and in keeping with judicial economy by avoiding the ne-

cessity for two hearings for us to evaluate Coray's voting rights only after the hearing of July 5, 1990.

Noting that Coray's potential valid, negative vote is the only impediment to confirmation of the 3rd Plan, we will therefore continue the confirmation hearing until July 5, 1990. An appropriate Order will be entered.