In re FRG, INC., a Pennsylvania
Corporation, Debtor.

In re FRP LIMITED PARTNERSHIP,
a Pennsylvania Limited
Partnership, Debtor.

In re FMI LIMITED PARTNERSHIP, a
Pennsylvania Limited Partnership,
Debtor.

Bankruptcy Nos. 89–12766S, 89–12768S
and 89–12769S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 30, 1990.

452

Joseph A. Vogel, Mark S. Indelicato, Hahn & Hessen, New York City, Max L. Lieberman, Bonnie Golub, Pelino & Lentz, P.C., Philadelphia, Pa., for debtor.

Steven R. Fischer, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, Pa., for Frederick Blumberg.

Nicholas J. LePore, III, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Creditors' Committee.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

This Memorandum addresses a Motion by the three above-named Debtors, proponents of a joint Plan of Reorganization, who sought to have us temporarily disallow seven of eight proofs of claims filed in these various cases by Frederick Blumberg, Esquire ("Blumberg"). Because Blumberg chose to present virtually no evidence to support his claims against the Debtors' short but straightforward attack, we concluded in an Order of November 26, 1990, that we should grant the Debtors' request. We therefore proceeded to disallow, for voting purposes only, all but an unopposed claim of $20,025 (No. 28) filed

by him in the case of FRP LIMITED PARTNERSHIP ("FRP"), and $31,500 of a claim (No. 6) filed by him in the case of FMI LIMITED PARTNERSHIP ("FMI"). In our Order of November 26, 1990, we promised that we would submit the instant Memorandum explaining that decision shortly thereafter.

FRG, Inc. ("FRG"), the third of the above-captioned Debtors, is the general partner of FRP and FMI. FRP is the managing general partner of about 60 limited partnerships owning discrete apartment complexes, office buildings, or other realty, mostly in various states in the southern part of the United States. FMI was formed to hold certain notes relevant to the operations of these partnerships.

The cases of FRG, FRP, and several of the limited partnerships arrived in this court as the result of a successful motion by Blumberg to transfer the venue of the pending cases from the Southern District of New York, where they had been filed on May 17, 1989, to this court, as reflected in a decision of July 28, 1989, by the Honorable Howard C. Buschman, III, reported at 107 B.R. 461. *See, e.g., In re Boca Raton Sanctuary Associates,* 105 B.R. 273, 273 (Bankr.E.D.Pa.1989). Subsequent to the transfer of venue, several more of the limited partnerships have filed cases in this court.

On September 26, 1990, this court approved the Disclosure Statement accompanying the Debtors' Second Amended and Restated Joint Plan of Reorganization ("the Plan"). In that Order, we set November 13, 1990, as the last date for submission of ballots or objections to confirmation of the Plan; November 20, 1990, as the date for the Debtors' filing a report of plan voting; and November 28, 1990, as the date for the Confirmation hearing. On that date, we proceeded to confirm the Debtors' Plan.

Perceiving that votes rejecting their Plan by several parties holding claims filed in very large amounts would jeopardize con-

firmation, the Debtors filed not only certain Objections to proofs of claim filed in one or each of their cases, but also, in the case of about a half dozen claims in very large amounts, the hearings on the Objections to which were not listed until December, 1990, filed motions to temporarily disallow or estimate these claims on an expedited basis prior to November 28, 1990.

These motions were procedurally based upon Bankruptcy Rule ("B.Rule") 3018(a), the mechanics of which we discussed in *In re Goldstein,* 114 B.R. 430 (Bankr.E.D.Pa. 1990). In *Goldstein,* we rejected the Debtor's contention that the filing of an objection to a proof of claim, without more, disenfranchises a claimant unless the claimant himself successfully files a motion pursuant to B.Rule 3018(a). *Id.* at 434. However, we did find that B.Rule 3018(a) was "a tool which the court *or any party* can invoke to expedite confirmation when numerous objections to claims cloud the issue of creditors' rights to vote" (emphasis added). *Id.* Here, the Debtors utilized this tool. We might add that they apparently used the tool properly because, except for Blumberg, all of the claimants targeted with B. Rule 3018(a) motions settled with the Debtors, in many cases agreeing to vote claims drastically reduced in amount from the proofs filed.

Blumberg filed the following constellation of unsecured claims:

1. FRG case
   a. No. 67 – $ 49,970
   b. No. 68 – $2,000,000
2. FRP case
   a. No. 27 – $2,000,000
   b. No. 28 – $ 20,025
   c. No. 29 – $ 34,721
3. FMI case
   a. No. 5 – $2,000,000
   b. No. 6 – $ 35,314
   c. No. 7 – $ 13,249

On November 21, 1990, the Debtors filed a Report of Plan Voting. The votes for classes 7, 8, and 9, the unsecured creditors of FRG, FRP, and FMI, respectively, voted as follows:

| Class | Number Accepting | Amount Accepting | Number Rejecting | Amount Rejecting |
|---|---|---|---|---|
| 7 | 101 | $10,706,575.83 | 3 | $2,148,170 |
| 8 | 46 | 7,956,980.81 | 4 | 2,171,746 |
| 9 | 13 | 1,215,865.00 | 2 | 2,048,563 |

All impaired classes of creditors accepted the Plan except Class 9. If the $2,000,000 claim of Blumberg is discounted, the Plan would be confirmed by a landslide.

The bases for Blumberg's $2,000,000 proofs of claim are set forth in a Complaint attached thereto which was filed by him in this federal district court, at C.A. No. 88–5761 (E.D.Pa.) ("the Federal Action"). Named as defendants in the Federal Action are the three Debtors, FRANKLIN REALTY DEVELOPMENT CORP. ("FRDC"), and four individuals who are apparently principals of the Debtors and of FRDC. The Complaint alleges that the following substantive claims arose out of the settlement of an earlier state-court lawsuit ("the State Action") previously brought by him against basically the same parties: violations of federal securities laws, fraud and misrepresentation, breaches of fiduciary duties, breaches of contract, tortious interference with a business relationship, and conspiracy. The gravamen of the Complaint is that the settlement, in which FRG, FRP, and FMI paid Blumberg $400,000, $250,000, and $150,000, respectively, to settle the 1986 State Action and redeem most of his stock, was inadequate due to the omission of certain properties from the Debtors' list of holdings and the addition of these properties to the portfolio of FRDC in evaluating the worth of the Debtors.

The $2,000,000 figure, not referenced in the Complaint, was apparently intended to be Blumberg's estimate of his likely total recovery in the Federal Action from all of the Defendants. Hence, Blumberg's counsel agreed, at the hearing, to apportion this sum in thirds among the three Debtors.

Similarly, Blumberg's counsel agreed that Claim No. 67 in the FRG case was a duplicate and a composite of Claim No. 29 in the FRP case and claim No. 7 in the FMI case. All of these claims arose from al-

leged unpaid distributions from the Debtors' transfer of a limited partnership named Franklin Winding Brook Associates ("FWBA"). The final contested claim, No. 6 in the FMI case, represented payments allegedly due under the $150,000 note received from FMI in settlement of the 1986 State Action.

At the hearing, the sole witness was Aurin Primack ("Primack"), the Debtors' President. Primack testified that, by coincidence, he had seen Blumberg at lunch that day. However, instead of appearing to testify, Blumberg, appearing solely by his counsel, chose mainly to protest the instant proceeding as an unfair attempt to disenfranchise him.

■ As our discussion of the *Goldstein* decision at page 453 *supra* makes clear, this criticism is misplaced. The Debtors, providing Blumberg the right to defend which the *Goldstein* debtor sought to deny his creditor merely because he objected to a claim, properly and temperately utilized B.Rule 3018(a) in this case.

Primack testified that Blumberg had been chief legal counsel and a director and officer of the Debtors and their predecessors from their inception in 1981 until his resignation in May, 1986, upon the resolution of the State Action. Per an Affidavit filed in opposition to Blumberg's successful motion to change venue in these cases in New York, admitted into the record here, Primack alleged that the differences between the parties were sparked by Blumberg's desire to retain the Debtors' lucrative legal business after he changed law firms. The State Action was characterized as a strike suit, in which Blumberg, himself perhaps the single person most knowledgeable of the Debtors' affairs, claimed to

have been defrauded by a transfer of certain assets from the Debtors to FRDC of which he was unaware. Primack alleged that these claims were a sham.

Contrary to Blumberg's contentions, Primack testified that the 1986 settlement terms were exorbitantly favorable to Blumberg, and were agreed to by the Debtors mostly in consideration for a General Release ("the Release"), executed by Blumberg on May 29, 1986, which would eliminate any more of such claims in the future. The Release contains the following recitations:

2. With the sole exception of the obligations, covenants and agreements of the Franklin entities and affiliates and the Franklin partners, officers and directors under and pursuant to the Agreements, *Blumberg does hereby remise, release and forever discharge the Franklin entities and affiliates and the Franklin partners, officers and directors from any and all manner of actions, causes of actions*, suits, debts, accounts, understandings, contracts, agreements, controversies, judgments, damages, *claims, liabilities and demands of any kind or nature whatsoever which Blumberg ever had, now has or hereafter can, shall or may have, whether or not now known to Blumberg,* for, upon or by reason of any act, transaction, agreement, understanding, contract, conduct, matter, cause or thing of any kind or nature whatsoever that arose or occurred prior to the date hereof, whether or not now known to Blumberg, including but not limited to any action, cause of action, suit, debt, account, understanding, contract, agreement, controversy, judgment, damage, claim, liability and demand of any kind or nature whatsoever arising out of, relating to or based upon, in whole or in part:

(a) The Blumberg Action [the State Action lawsuit] and counts one and two contained therein;

(b) *Any count, claim or cause of action which could have been alleged in The Blumberg Action and the continuance in the future of any act, practice, course of dealing, claim or cause of action asserted in The Blumberg Action;*

(c) Any action, claim or cause of action for an accounting, breach of fiduciary or any other duty, fraud, mismanagement, misuse of corporate or partnership assets, overreaching, usurpation of corporate or partnership opportunities and/or waste of corporate or partnership assets;

(d) Any guarantee or other fees, whether received in the past, present or future, for providing personal guarantees or other accommodations for the benefit of any of the Franklin entities and affiliates;

(e) *Any act, transaction, agreement, understanding, contract, practice or conduct arising or occurring prior to the date hereof, which is actionable or claimed to be actionable, under any statutory or common law of the United States or any state thereof;*

(f) Any effect which existed or occurred, or presently exists or occurs, or may in the future exist or occur, as a result of any transaction, agreement, understanding, contract, practice or conduct that occurred prior to the date hereof; and

(g) *Any other act, transaction, agreement, understanding, contract, practice or conduct whatever that occurred prior to the date hereof.*

Primack therefore claimed that not only were Blumberg's claims in the Federal Action without substantive basis, but they were barred by the terms of the Release.

Primack also testified that Blumberg's claims for a share of the distribution from the sale of FWBA were baseless, because FWBA had never distributed anything to any of its partners. Finally, while he conceded that the claim for payment of $30,000 in principal pursuant to Claim No. 6 in the FMI case had merit, he stated that interest added thereto was overstated by about $4,000.

Blumberg's counsel responded to the argument that his claimant's claims in the Federal Action were without merit and were not subject to the Release by intro-

ducing an Order of the district court of January 30, 1989, unenhanced by any Opinion or explanation, denying the defendants' motion for summary judgment and to dismiss that action.

Blumberg's counsel was unable to explain how the $2,000,000 figure was derived. He was also unable to verify what percentage of ownership interest Blumberg had in either FWBA or in two ventures allegedly misappropriated from the Debtors by FRDC, although it was established that one of these ventures had later been resold by FRDC for $10 million.

We have already indicated that we believe that the Debtors' instant motion was a proper application of B.Rule 3018(a), as we described in *Goldstein*. There is, however, very little authority addressing what procedures are to be used by courts which employ the estimation process, either in furtherance of B.Rule 3018(a) or, in what appears to be a somewhat more common occurrence, in estimating the amount of contingent or unliquidated claims under 11 U.S.C. § 502(c). It seems clear that a very truncated trial process may be developed which is consistent with the dictates of due process of law. *See In re Apex Oil Co.*, 92 B.R. 843, 845–47 (Bankr.E.D.Mo.1988); *In re Baldwin–United Corp.*, 55 B.R. 885, 899–902 (Bankr.S.D.Ohio 1985); and Comment, *Procedures for Estimating Contingent or Unliquidated Claims in Bankruptcy*, 35 STANFORD L.REV. 153, 158–70 (1982).

■ The application of some estimation process is required when a B.Rule 3018(a) motion is presented to a bankruptcy court. *See, e.g., In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir.1985); *Goldstein, supra*, 114 B.R. at 433; and *In re Transamerican Natural Gas Corp.*, 79 B.R. 663, 665–66 (Bankr.S.D.Tex.1987). Our local Court of Appeals has held that the bankruptcy court is accorded broad discretion as to the method used by the court in the process of valuation and obtaining useful results from that process. *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135–36 (3d Cir.1982).

None of the foregoing cases discuss in detail the relative burdens of proof of the objecting trustee or debtor on one hand and those of the creditor on the other. However, the *Baldwin–United* court observes that the claimants in that estimation process had an obligation to show that their claims had merit. 55 B.R. at 899–900.

■ We cannot imagine any reason for allocating the burdens of proof differently in a proceeding to estimate claims than in a proceeding to finally determine the merits of a proof of claim. The estimation process is merely a microcosm of the ordinary claims-determination process. Merely because the Debtors invoked the B.Rule 3018(a) process should certainly not place the burden of proof upon them, any more than it should heighten the burden upon the claimant who wishes to establish his voting rights by invoking B.Rule 3018(a).

■ We therefore conclude that the allocation of the burdens of proofs in the B.Rule 3018(a) estimation process is the same as in deciding objections to proofs of claim, a topic upon which we have commented with great specificity in spelling out five common scenarios in such litigation in *In re Lewis*, 80 B.R. 39, 40–41 (Bankr.E.D.Pa.1987). *Accord, In re Jordan*, 91 B.R. 673, 683–84 (Bankr.E.D.Pa. 1988); and *In re Celona*, 90 B.R. 104, 109 (Bankr.E.D.Pa.1988), *aff'd sub nom. Celona v. Equitable National Bank*, 98 B.R. 705 (E.D.Pa.1989). The instant matters, presenting a claimant who had counsel appear to oppose the Debtors' motion but who, despite his apparent availability, chose not to appear, is the paradigm of the fourth scenario, in which we thusly described the parties' relative evidentiary burdens:

We must examine the Proof, the pleadings, and the record and sustain the Proof of Claim only in the amount that we would if we were hearing the matter at trial, with, as at trial, the burden of proving its case by a preponderance of the evidence upon the claimant. In this case, the objector has gone forward with evidence, and any presumption in favor of the claimant vanishes. This disposi-

tion is similar to the "bursting bubble" theory of the impact of presumptions, which we declined to apply in interpreting 11 U.S.C. § 547(f) in *In re Art Shirt, Ltd., Inc.,* 68 B.R. 316, 332 (Bankr.E.D. Pa.1986), [*aff'd,* 93 B.R. 333 (E.D.Pa. 1988),] but which we believe is properly applied here.[1]

Blumberg therefore had the burden of proving the validity of all elements of his claims by a preponderance of the truncated evidence presented at the hearing. Clearly, he failed to sustain this burden as to most of his claims.

■ First, we consider the claims of $2,000,000 set forth in his Complaint in the Federal Action. The first hurdle which Blumberg must clear to render the claims cognizable is elimination of significance of the Release of May 29, 1986.

It is difficult for us to imagine a Release which is at once broader and at the same time more directly pointed at the claims in issue than the Release of, *inter alia,* the Debtors by Blumberg quoted at pages 454–455 *supra.* Our review of the Complaint in the State Action, admitted into the instant record, reveals that it recites the same claims of "skimming lucrative fees from FRP, FMI, FRG and its subsidiaries" by FRDC and the individual defendants, to his disadvantage, which are set forth by Blumberg more elaborately, but are the core of, his claims in the Federal Action.

Therefore, in apparent violation of the specific terms of the Release, Blumberg has reiterated the same claims which he agreed to give up in exchange for the financial consideration which he received in the settlement of the State Action. The Release is, moreover, equally as specific in giving up any other choate or inchoate claims against the Debtors as well. Furthermore, it is almost impossible to conceive of Blumberg as naive in entering into this agreement. Rather, it appears that the Debtors were naive to assume that Blumberg would abide by the terms of the Release.

The law of Pennsylvania, which we assume controls the Release of claims asserted between Pennsylvania domiciliaries as a settlement of a lawsuit brought in its courts, does not suggest niggardly treatment of releases:

> Pennsylvania law is clearly that where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims (footnote omitted).

*Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 896 (3d Cir.1975).

Under Pennsylvania law, a signed release is binding upon the parties unless executed and procured through fraud, duress, accident, or mutual mistake. *Id.* at 892, citing *Kent v. Fair,* 392 Pa. 272, 140 A.2d 445 (1958); *see also Commonwealth of Pennsylvania v. Flaherty,* 547 F.Supp. 172 (W.D.Pa.1982). The natural and ordinary meaning of the language of the release demonstrates the intention of the parties and will prevail unless one of the parties unequivocally proves that the release is invalid. *Sears, Roebuck & Co. v. Jardel Co.,* 421 F.2d 1048, 1051 (3d Cir.1970); *Young v. Robertshaw Controls Co.,* 430 F.Supp. 1265, 1268 (E.D. Pa.1977); *Frank v. Volkswagenwerk, A.G. of West Germany,* 382 F.Supp. 1394, 1400 (E.D.Pa.1974), *Modified on appeal,* 522 F.2d 321 (3rd Cir.1975). The party alleging that the release is invalid has the burden of proving its invalidity. *Young,* 430 F.Supp. at 1268; *Hohlweiler v. Pennsylvania R.R., Co.,* 294 F.Supp. 1377, 1381 (E.D.Pa.1969), *aff'd,* 436 F.2d 1382 (3d Cir.1971), *cert. denied,* 404 U.S. 884, 92 S.Ct. 220, 30 L.Ed.2d 167 (1971). *Reed v. Smithkline Beckman Corp.,* 569 F.Supp. 672, 674–75 (E.D.Pa.1983). *Accord, e.g., Popovich v. Empire Beauty Schools, Inc.,* 567 F.Supp. 1440, 1442 (E.D. Pa.1983); *Dickun v. United States,* 490 F.Supp. 136, 138 (W.D.Pa.1980); *Wolbach v. Fay,* 488 Pa. 239, 242, 412 A.2d 487, 488 (1980); and *Brill's Estate,* 337 Pa. 525, 527–28, 12 A.2d 50, 52 (1940). Moreover, in

---

**1.** We reconsidered the conclusion which we reached in *Art Shirt* in *In re Old World Cone Co.,* 119 B.R. 473, 477–78 (Bankr.E.D.Pa.1990). We have now concluded that the "bursting bubble" theory relating to presumptions applies even in the context of application of § 547(f).

almost every one of the above-cited cases, the bargaining power and acumen of the releasing · party relative to the party released was considerably less than that of Blumberg relative to the defendants in the State and Federal Actions. *Compare, e.g., Wolbach, supra*, 488 Pa. at 243, 412 A.2d at 488 (Larsen, J., dis. op.).

■ Blumberg's efforts to rebut the Debtors' contentions on the basis of the district court's denial of the defendants' motion for summary judgment or dismissal must fail. This decision has no *res judicata* effect, as it was not a *final* judgment on the merits. *See, e.g., United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984); and *In re Berg*, C.A. No. 90–3693, slip op. at 6, 1990 WL 175690 (E.D.Pa. Nov. 8, 1990). The absence of an explanatory opinion, describing the reasons for the district court's determination, as well as the lack of finality, precludes any collateral estoppel effect from that decision. *See, e.g., Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976); and *In re Gaebler*, 88 B.R. 62, 65–66 (E.D.Pa.1988). The denial of the defendants' motion may have been motivated by the district court's belief that some material factual issues remained in the case, at least as to some of the defendants.

■ Even if Blumberg were able to overcome our belief that he released the claims recited in the Federal Action as to the Debtors, we question the merits of these claims. It is difficult for us to understand how a knowledgeable attorney could twice be duped about the holdings of a company of which he was general counsel, an officer, and a director. Furthermore, the substance of Blumberg's claims is that the individual defendants transferred property which rightfully belonged to the Debtors to FRDC. Therefore, under Blumberg's scenario, the Debtors are co-victims, with him, of the misconduct of the other defendants. Being a co-victim would appear to be an odd basis upon which to charge the Debtors' estate with the entire amount of damages sought by Blumberg in that action. Also, if the Federal Action were really so meritorious, we wonder why Blumberg would have ever agreed to stay the Action as to the individual defendants and FRDC, on whose behalf no automatic stay arises, pending administration of these cases. *See, e.g., Ingersoll–Rand Financial Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir.1987); *Greene & Kellogg, Inc. v. Oxford Hospital, Inc.*, 95 B.R. 26, 27 (E.D. Pa.1989); and *In re University Medical Center*, 82 B.R. 754, 757, 759–60 (Bankr.E. D.Pa.1988).

■ Finally, assuming *arguendo* that Blumberg had succeeded in establishing some rights against the Debtor in the Federal Action, we have no factual basis upon which we could quantify his claim at $2,000,000. The plaintiff in a lawsuit must prove his damages. *See, e.g., National Controls Corp. v. National Semiconductor Corp.*, 833 F.2d 491, 495–96 (3d Cir. 1987); *Rochez Bros. v. Rhoades*, 527 F.2d 891, 894 (3d Cir.1975), *cert. denied*, 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976); and *Maxwell v. Schaefer*, 381 Pa. 13, 21, 112 A.2d 69, 73 (1955). Blumberg has presented no evidence on the basis of which we could even guesstimate the measure of Blumberg's claim against the Debtors. The only evidence which was quantified was a submission by the Debtors indicating that Blumberg's entire interest in FMI was valued at $225,939, making the potential of liability of that Debtor of anything approaching $2,000,000 to him unlikely.

■ Blumberg has also failed to establish the merit of most of his other claims as well. There is . no evidence on the record which rebuts Primack's credible recitation that no profits from FWBA's sale of its property were distributed to any of its partners. If this is so, Blumberg would not appear to be entitled to any of the $49,970 claimed on this basis.

Furthermore, again, Blumberg has totally failed to quantify his claim. We are unable to ascertain to what distribution any or all of the partners of FWBA were or should have been entitled. We are unable to ascertain what share of this entity he owned. We are therefor totally unable to

measure these claims and we are accordingly obliged to deny them.

Finally, there is no evidence to rebut Primack's contention that Blumberg has miscalculated the interest due to him on the $150,000 note from FMI. Giving Blumberg the benefit of any doubt, we measured Claim No. 6 in the FMI case at $31,500, even though this resulted in a slightly higher figure than the $4,000 reduction from the $35,314 claim which Primack testified was warranted would have yielded.

Blumberg's Claim No. 28 in the FRP case has not been the subject of an objection. Therefore, it was not mentioned or disturbed in our Order of November 26, 1990.

For these reasons, we entered that Order.

### ORDER

AND NOW, this 26th day of November, 1990, after a hearing on November 21, 1990, in consideration of the Motion of FRG, Inc. ("FRG"), FRP Limited Partnership ("FRP"), and FMI Limited Partnership ("FMI") for an Order Temporarily Disallowing Proofs of Claims No. 67 and 68 against FRG; Claims No. 27 and 29 against FRP and Claims No. 5, 6 and 7 against FMI of Frederick Blumberg for Purposes of Accepting or Rejecting Debtors' Plan, it is hereby ORDERED and DECREED as follows:

1. Claim No. 6 in the FMI case is temporarily allowed in the amount of $31,500.00.

2. Claims No. 67 and 68 against FRG; Claims No. 27 and 29 against FRP; and Claims No. 5 and 7 against FMI are temporarily disallowed. A Memorandum explaining the reasons for this Order in more detail will be filed shortly hereafter.