**In re LANSDALE FAMILY RESTAURANTS, INC. a/k/a Lansdale Bonanza, Debtor.**

**LANSDALE FAMILY RESTAURANTS, INC., Appellant,**

v.

**WEIS FOOD SERVICE.**

No. 92–1286.

United States Court of Appeals, Third Circuit.

Argued September 22, 1992.

Decided Oct. 16, 1992.

George M. Lutz (argued), Mogel, Speidel, Bobb & Kershner, Reading, Pa., for appellant.

Michael M. Apfelbaum (argued), Apfelbaum, Apfelbaum, & Apfelbaum, Sunbury, Pa., for appellee.

Before: HUTCHINSON, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Lansdale Family Restaurants, Inc., Debtor in Reorganization ("Lansdale"), appeals from a final judgment of the district court affirming a judgment of the bankruptcy court denying Lansdale's action seeking the turnover of property from one of its creditors, Weis Food Service ("Weis"). The bankruptcy court had jurisdiction of this core proceeding under 28 U.S.C. § 1334(b) and § 157 and the district court under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 1291 and § 158(d).

## I. FACTUAL BACKGROUND

We turn first to the undisputed facts or matters testified to by the sole witness for Weis. Lansdale is a family restaurant that was a customer of Weis, a food supply business. For several years Weis had supplied Lansdale with food on a billed cost-plus basis. There came a time when Weis began requiring Lansdale to make payments on a C.O.D. basis in response to Lansdale's failures to make timely payments. However, it did not change its mark-up rate. Weis's witness testified that Weis also imposed payment on a C.O.D.-plus basis which was designed to pay-down Lansdale's accumulated debt. Shortly thereafter, on January 7, 1991, Lansdale filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101–1303 (1988 & Supp. II 1990). At the time the bankruptcy petition was filed, Lansdale owed Weis approximately $50,000.00 for unpaid supplies.

After Lansdale filed its petition, Weis refused to continue to supply Lansdale unless some pricing adjustments were made to provide for what Weis felt was the increased risk in supplying a financially troubled customer. Initially this was reflected in a higher mark-up on the products sold to Lansdale. However, Lansdale was required to continue to pay for these supplies on a C.O.D. basis.

After a few weeks of deliveries on this basis, Lansdale expressed difficulty in calculating its real costs. In response, Weis switched Lansdale to a "delivery fee" provision. The delivery fee was $500.00 per delivery. The witness for Weis testified that each fee was "credited" on the monthly statement received by Lansdale for the period in which the fee was charged. He also testified that the fee was security for the risk of receiving checks drawn on insufficient funds. This payment method continued until the termination of the parties business relationship sometime in September, 1991. The monthly statement in the record shows that at that time Lansdale owed Weis $25,971.37.

## II. BANKRUPTCY COURT DECISION

Lansdale, as debtor, filed a complaint in the bankruptcy court seeking turnover of property from Weis. It alleged that the payments of the delivery charges, amounting to $16,500.00 from January 22, 1991, through September 3, 1991, were post-petition transfers to Weis that were being applied to pre-petition debt in violation of 11 U.S.C. § 549(a) and the automatic stay provision of 11 U.S.C. § 362(a)(3). Lansdale sought the return of the delivery fee payments, costs, and attorney's fees.

After trial, the bankruptcy court made certain findings of fact. It found that the fees imposed were credited back on the immediate past month's statement and were not being applied to pre-petition debt. It implied that the $500.00 payments were imposed to cover the possibility of bad checks and thus they were reasonably required to protect Weis. It thereupon concluded that the delivery fees were "a proper and conservative means of securing payment from a credit-risk customer."

## III. DISTRICT COURT DECISION

Lansdale appealed the final judgment of the bankruptcy court to the district court, alleging that the bankruptcy court erred in its factual finding that the payments were not applied in partial satisfaction of Lansdale's pre-petition debt. The district court affirmed the bankruptcy court's judgment,

holding that the bankruptcy court's factual finding was not clearly erroneous. This appeal followed.

## IV. DISCUSSION

The sole attack in the district court on the bankruptcy court's judgment was based on an alleged erroneous finding of fact that the delivery fee payments were not applied to the pre-petition debt. It reviewed that determination under a clearly erroneous standard. We do the same. That stringent standard requires us to determine whether, although there is evidence to support it, we are left with the definite and firm conviction from the entire record that the bankruptcy court committed a mistake of fact. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

█ We turn then to the question of whether or not the district court erred in concluding that the bankruptcy court was not clearly erroneous in holding that the $500.00 delivery fees were not in payment of pre-petition debt. Lansdale argues that the evidence presented to the bankruptcy court, specifically, the monthly statements, irrefutably shows that the delivery fees were exacted to pay-down Lansdale's pre-petition debt, despite Weis's partisan testimony to the contrary, which the bankruptcy court accepted.

The many monthly statements supplied by Weis to Lansdale, and which are part of the record, reflect the following. The statement for the period commencing December 31, 1990, and ending February 2, 1991, the period in which the bankruptcy commenced, shows a balance of $45,898.09 due at the end of that period. The corresponding invoice for that period shows one $500.00 delivery fee dated January 31, 1991. As Weis alleged, and the bankruptcy court found, this amount appears in the column titled "CREDITS" on the monthly statement. This pattern of $500.00 delivery fees and corresponding credits appears in all of the monthly statements provided by Weis to Lansdale after the filing of the petition.

Of importance here, the delivery fees appearing as credits in the statements prepared by Weis were shown as additions to the payments for the goods received, all of which Lansdale was paying on a C.O.D. basis. The final monthly statement for the period ending November 2, 1991, shows a total due of $25,971.37, a decrease of $19,926.72 from the amount shown on the monthly statement as being owed for the period ending February 2, 1991. The amount paid as delivery payments for the corresponding thirty-three week period was $16,500.00, the amount sought by Lansdale in the bankruptcy court.[1]

Despite the foregoing evidence, Weis's witness testified, and the bankruptcy court found, that the delivery fees were not intended to be applied to reduce the pre-petition debt. Rather, the court found that the charges were applied as a credit on each month's statement.

While it is true that each delivery fee was denominated a "credit" on each month's statement, we cannot escape the fact that, in truth, it was applied of record to reduce Lansdale's pre-petition debt. Weis's argument that the payments were made pursuant to a post-petition agreement with Lansdale and were not intended to be payments on pre-petition debt does not withstand the force of the uncontradicted evidence shown in the monthly statements prepared by Weis. The characterization by Weis's counsel at oral argument of the decrease in the total amount owed as an "accounting procedure" does not respond to the reality that the "credits" were applied by Weis itself to reduce the pre-bankruptcy debt. Any other explanation would leave the use of these aggregate fees in a state of suspended animation. It is not amiss to point out that Weis's witness stated that prior to the petition Weis was billing Lansdale on a C.O.D.-plus basis to pay-down some of the outstanding debt. The consequence of that action is not before us.

Weis also attempted to justify the fees on the ground that Lansdale had a history of delayed payment for its goods and had on a few occasions paid with checks drawn

---

1. The difference, $3,426.72, is not accounted for and was not at issue in the bankruptcy court.

on insufficient funds. Weis argued that this situation created a risk factor entitling it to protection. The bankruptcy court accepted that explanation, presumably based on testimony by Weis's own witness that "there weren't more checks being returned [after the filing of the petition], there was the possibility of it." Although this testimony tends to support the conclusion that risks were involved in dealing with Lansdale, it does not support the bankruptcy court's further holding that the fees were charged for this purpose. In fact the record is to the contrary. There is no record application of the fees except to reflect a reduction in the pre-petition debt. Each time the products were delivered they were on a C.O.D. basis. To the extent the bankruptcy court's ultimate finding was based on the risk factor, it, too, was clearly erroneous under the *United States Gypsum Co.* standard.

The bankruptcy code's automatic stay provision prohibits "any act to obtain possession of property of the estate...." 11 U.S.C. § 362(a)(3). Our decision with respect to the bankruptcy court's factual finding necessarily means that Weis violated this provision. Section 362(h) of the bankruptcy code provides for, *inter alia,* recovery of actual damages for any willful violation of a stay. It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. *In re University Medical Center,* 973 F.2d 1065, 1087–88 (3d Cir.1992). Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional. *Id.*

The bankruptcy court, in finding that there was no violation of the automatic stay provision, concluded that Weis had not "actually pressured" Lansdale into paying pre-petition debt as a condition to providing post-petition deliveries. Whether or not Weis "actually pressured" Lansdale is not determinative of "willfulness" under the bankruptcy code. The acts by Weis of applying the delivery payments to pre-petition debt reduction was intentional on the records kept by Weis. Weis's statements to the contrary and the bankruptcy court's

findings that accepted Weis's testimony are clearly refuted by the monthly statements. Further, a creditor's "good faith" belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h). *In re University Medical Ctr.,* 973 F.2d 1065, 1087–88 (3d Cir.1992); *In re Atlantic Business & Community Corp.,* 901 F.2d 325, 329 (3d Cir. 1990).

There is no dispute that Weis knew that Lansdale had filed a petition in bankruptcy when it began imposing the delivery charges. It is further clear that on the documentary record made by Weis, the only logically permissible factual finding is that such charges were intended to produce funds to pay-down Lansdale's pre-bankruptcy debt. On this record, the bankruptcy court's conclusion to the contrary was clearly erroneous. The same is true of the district court's conclusion.

### V. CONCLUSION

The judgment of the district court will be reversed and the matter remanded to the district court with instructions to direct the bankruptcy court to vacate its judgment and to enter judgment for Lansdale and to consider its request for counsel fees.