RICHARD E. FEHLING, United States Bankruptcy Judge
I. INTRODUCTION
Defendant's conduct in barring Plaintiff from entering Plaintiff's restaurant constituted a willful violation of the automatic stay that caused Plaintiff to suffer actual damages to his property ($7,250) and emotional distress ($2,000), which combined is $9,250. I will also impose on Defendant, as part of Plaintiff's actual damages, a close approximation of Plaintiff's attorney's fees in the amount of $3,500. Defendant's conduct in violating the stay was patently egregious and outrageous, thereby requiring the imposition of punitive damages in the amount of $5,000. The award of punitive damages is intended to punish Defendant and will deter him (hopefully) from such blatant transgressions of the automatic stay in the future. The total amount owed to Plaintiff from Defendant therefore is $17,750 and I will enter judgment in favor of Plaintiff and against Defendant in that amount.
On February 18, 2015, Plaintiff/Debtor, Tam Q. Vu ("Plaintiff"), initiated this adversary proceeding against Defendant/Landlord, Yung Lin ("Defendant"), seeking damages under 11 U.S.C. § 362(k)(1) for violating the automatic stay. I held the trial on April 27, 2018, and directed the parties to file post-hearing briefs, which they did.[1] This matter is now ripe for decision.
II. FACTUAL AND PROCEDURAL BACKGROUND
Sometime in January 2013, Plaintiff purchased the assets of a restaurant business operating at 1930 Columbia Ave., Lancaster, PA (the "Premises"), from Kar Thiem Lee ("Mr. Lee") for $73,000. On January 15, 2013, as part of the acquisition of the restaurant, Plaintiff entered into an Assignment and Assumption of Lease with DFY Realty Management, Inc. ("DFY"), the owner of the Premises. Defendant is the President of DFY.
Beginning almost immediately, in April 2013, Plaintiff had difficulty making timely lease payments to DFY. In February 2014, *601 DFY filed a state court eviction action against Plaintiff. The state court entered a judgment of eviction against Plaintiff and in favor of DFY on April 24, 2014. The Sheriff scheduled eviction of Plaintiff from the Premises on May 13, 2014, but Plaintiff stayed the eviction when he filed his bankruptcy petition on that date. Defendant received notice of Plaintiff's bankruptcy filing the next day, May 14, 2014.
After Plaintiff filed his bankruptcy petition, he paid rent to DFY for approximately two months. Thereafter, his payment on the lease became sporadic. Sometime in January 2015, upon the poor health of both Plaintiff and his wife, Plaintiff decided to surrender the Premises to Defendant effective on January 31, 2015. On or about January 28, 2015,[2] Defendant entered the Premises (which Plaintiff had not yet surrendered) and changed the locks. As a result, Plaintiff was unable to enter the Premises to retrieve his personal property.[3]
On January 29, 2015, counsel for Plaintiff sent counsel for Defendant a letter advising her that Defendant had violated the automatic stay by locking Plaintiff out of the Premises. The letter stated that Plaintiff desired to remove his personal property from the Premises and have an auctioneer catalogue the property for sale. Plaintiff's counsel requested that Defendant's counsel contact her for Plaintiff to arrange for speedy liquidation of the personal property. As Defendant had done previously, counsel for Defendant acted with insouciance, ignoring the letter, and she did not reply. Plaintiff was provided no opportunity to enter the Premises to catalogue or retrieve his personal property. As a result, Plaintiff filed the complaint now before me seeking actual damages (including attorneys' fees) and punitive damages against Defendant under 11 U.S.C. § 362(k)(1) for violating the automatic stay.
III. DISCUSSION
A. Plaintiff incorrectly claimed that the Trustee had abandoned the restaurant assets and other property from the estate before Defendant's actions.
Plaintiff alleged in his brief for the first time that the Chapter 7 Trustee had abandoned all assets to Plaintiff on January 7, 2015.[4] This abandonment was said to have occurred a couple weeks before Defendant allegedly violated the automatic stay.
Plaintiff appeared to rely on (but did not definitively plead) Section 362(a)(3) of the Bankruptcy Code as the basis for the alleged stay violation. If Plaintiff were correct in alleging that the assets had been abandoned from the estate on January 7, 2015, however, no violation of the stay could have occurred. The stay of Section 362(a)(3) applies to, and protects against, acts to obtain possession of, or exercise control over, property of the estate. 11 U.S.C. § 362(a)(3). It neither applies to, nor protects against, acts to obtain possession *602 of, or control over, property abandoned from the estate which would thereafter revert back to a debtor. See Fields v. Bleiman, 267 Fed. Appx. 144, 146 (3d Cir. 2008) ; 11 U.S.C. § 362(c)(1).
On June 20, 2018, I ordered the parties to file supplemental briefs to address the abandonment issue. I also asked Plaintiff to identify the subsection of Section 362(a) on which he relies for his claim of a stay violation. All briefs have been filed and the abandonment issue is ready for disposition.
Plaintiff's supplemental brief now clearly identifies Section 362(a)(3) as the basis for his demands.[5] Plaintiff also retracts the statement in his first brief charging that the Chapter 7 Trustee had abandoned all assets to Plaintiff on January 7, 2015. To the contrary, the Trustee filed a "no asset" report on January 7, 2015, but did not abandon the property from the estate on that day.[6] Plaintiff now alleges that under Section 544(c) of the Bankruptcy Code, 11 U.S.C. § 544(c), such property was deemed to have been abandoned to Plaintiff upon the closing of the main bankruptcy case. Because Plaintiff now acknowledges that the property in issue had not been abandoned by the Trustee, Plaintiff's Section 362(a)(3) action remains viable.
Plaintiff's supplemental brief, however, states that Defendant was wrong in taking control over the property because Plaintiff had exempted it in his Schedule C.[7] Plaintiff's second red herring appears at first glance to present another self-defeating obstacle to Plaintiff's recovery under Section 362(a)(3). Property claimed by a debtor as exempt becomes exempt and is no longer property of the bankruptcy estate unless, 30 days after the creditors' meeting, the trustee or another party in interest files an objection to a debtor's claimed exemptions. Taylor v. Freeland & Kronz, 938 F.2d 420, 423 (3d Cir. 1991), aff'd 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) ; In re Mollo, 196 Fed. Appx. 102, 104 (3d Cir. 2006)citing Taylor.
The deadline for objections to Plaintiff's exemptions was February 6, 2015, 30 days after the January 7 creditors' meeting. Neither the Chapter 7 Trustee nor any other party objected to Plaintiff's claim of exemptions. All of the property that Plaintiff had claimed as exempt therefore finally became exempt and was no longer property of the estate on February 7, 2015. Before that date, however, the property claimed as exempt remained property of the estate. Because Defendant's conduct occurred before February 7, 2015 in all respects, Plaintiff's request for sanctions for Defendant's violation of the automatic stay remains viable. The restaurant and other personal property at issue in this dispute were property of the estate at all relevant times of Defendant's conduct.
B. Defendant violated the automatic stay when he changed the locks to the Premises, and he further violated the stay when he failed to respond to Plaintiff's request for an opportunity to access the Premises to retrieve and catalogue his property.
The filing of a bankruptcy petition operates as an automatic stay of all collection activities, including "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay is one of the fundamental protections *603 afforded to a debtor by the Bankruptcy Code. Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr. ), 973 F.2d 1065, 1074 (3d Cir. 1992) ; In re Traversa, 585 B.R. 215, 219 (Bankr. E.D. Pa. 2018). The scope of the automatic stay is broad and provides a debtor with a breathing spell from his creditors. The automatic stay stops all harassment and collection efforts and maintains the status quo between a debtor and his creditors. Univ. Med. Ctr., 973 F.2d at 1074 ; Traversa, 585 B.R. at 219.
Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). As the Third Circuit instructed:
It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.... [A] creditor's good faith belief that he is not violating the automatic stay provision is not determinative of willfulness.
Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc. ), 977 F.2d 826, 829 (3d Cir. 1992) ; see also Lansaw v. Zokaites (In re Lansaw ), 853 F.3d 657, 664 n.4 (3d Cir. 2017).
Defendant received notice of Plaintiff's bankruptcy filing on May 14, 2014. I find and conclude, therefore, that Defendant had actual knowledge of Plaintiff's bankruptcy filing from May 2014 through January 2015. He had actual knowledge when he changed the locks. And he had actual knowledge when he failed to respond to the request of Plaintiff s counsel for access to Plaintiff's property. I find and conclude, therefore, that by changing the locks and failing to respond to counsel's request for access to the restaurant Premises, Defendant acted to obtain possession of and to exercise control over the Premises and Plaintiff's personal property, all of which were property of the estate. When Defendant changed the locks to the Premises and failed to respond to Plaintiff's request for access to the personal property, he knew that Plaintiff was in bankruptcy. His conduct therefore constituted a willful violation of the automatic stay. Lansaw, 853 F.3d at 664, n.4 ; Lansdale Family Rests., 977 F.2d at 829.
Defendant argues that no stay violation occurred because the personal property that remained in the Premises when the lockout occurred belonged to DFY, and not to Plaintiff. Attempting to prove this allegation, Defendant attached to his May 18, 2018 brief a copy of an alleged 2006 lease between DFY and Meifang Lin ("Lin"). I reject this contention out of hand. First, the 2006 lease was neither offered nor admitted into evidence and is not evidence that I may consider. Second, the lease with Lin is not relevant to this case because it is not the lease that Plaintiff assumed when he took possession of the Premises. Plaintiff assumed a lease dated July 3, 2009 between DFY and Mr. Lee.[8] The lease between DFY and Mr. Lee does not convey to Mr. Lee any personal property or equipment as part of the leased Premises. I therefore find and conclude that Plaintiff acquired any and all personal property in the leased Premises when he purchased the assets of the restaurant business from Mr. Lee. All such property *604 belonged to Plaintiff and not to DFY at the time of the lockout.
C. Plaintiff is entitled to $12,750 for actual damages from loss of his property, attorneys' fees, and emotional distress, which loss he sustained as a direct result of Defendant's willful violation of the automatic stay.
When, as here, a debtor establishes a willful violation of the automatic stay, Section 362(k)(1) of the Bankruptcy Code provides that the debtor may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages. 11 U.S.C. § 362(k)(1).
Actual damages under Section 362(k)(1)"must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." In re Nixon, 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009)quoting Aiello v. Providian Fin. Corp., 257 B.R. 245, 249 (N.D. Ill. 2000), aff'd, 239 F.3d 876 (7th Cir. 2001) ; accord Heghmann v. Indorf (In re Heghmann ), 316 B.R. 395, 405 (1st Cir. BAP 2004) ("actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount"); Sculky v. Internal Revenue Service (In re Sculky ), 182 B.R. 706, 708 (Bankr. E.D. Pa. 1995) ("[d]amages may not be awarded based upon speculation, guess and conjecture"). Plaintiff bears the burden of proving all aspects of his actual damages claim. Nixon, 419 B.R. at 291 ; see also Miller v. Blatstein (In re Main, Inc. ), No. Civ. A. 98-5947, 1999 WL 424296, at *5 (E.D. Pa. June 23, 1999) ; Lord v. Carragher (In re Lord ), 270 B.R. 787, 794 (Bankr. M.D. Ga. 1998) ; see generally In re FRG, Inc., 121 B.R. 451, 458 (Bankr. E.D. Pa. 1990).
Plaintiff seeks the following amounts as actual damages he incurred as a result of Defendant's violation of the automatic stay: (1) $21,200, which is the value Plaintiff ascribes to the restaurant equipment and food items that remained in the Premises when Defendant changed the locks;[9] (2) $8,500, the amount of the security deposit Plaintiff provided to Defendant at the inception of the lease, which was never refunded; (3) an unspecified amount as compensation for emotional distress; and (4) an unspecified amount in attorneys' fees.
Plaintiff maintains that various items of restaurant equipment and food items[10] remained in the Premises at the time of the lockout. No manufacturer's names or model numbers were provided for the equipment. Plaintiff purchased as new some of the equipment, such as an ice machine, freezer, display, and cash register, but he did not provide the dates of these purchases or the amounts he paid for them. All of the other restaurant equipment was purchased by Plaintiff in January 2013 as part of his purchase of the restaurant business from Mr. Lee.
Defendant testified that the restaurant equipment in the Premises at the time he changed the locks was very old and worth very little, if anything. He also testified that the food remaining in the Premises was old and was not suitable for use.[11] But similar to Plaintiff, Defendant, who controlled the Premises after the lockout, failed to provide any detailed information about the nature and value of the restaurant equipment.
*605 Plaintiff testified that an auctioneer had agreed to purchase the restaurant equipment remaining in the Premises at the time of the lockout for an amount between $13,000 and $16,000. The anticipated purchase was intended to occur on January 31, 2015, but was thwarted by Defendant's lockout. Defendant offered no agreement, bill of sale, letter, or email to establish the terms of the alleged sale. Plaintiff's testimony about the auctioneer might have been suspect, but Defendant's counsel failed to object to any part of it.[12] Plaintiff offered no other evidence regarding the age or condition of the equipment. Based on this meager evidence, I find and conclude that Plaintiff failed to meet his burden of proving that the value of these items is $21,200. Instead, I find from all of the combined evidence that their value was half of what Plaintiff claimed was the auction price - $7,250.[13] Plaintiff is therefore entitled to an award for actual damages of $7,250 to compensate him for the value of the equipment.
Defendant concedes that he has not returned the $8,500 security deposit to Plaintiff. But he maintains that DFY is owed much more than this amount in past due rent and as damages for Plaintiff's breach of the lease.[14] Plaintiff failed to address this claim at trial or in his briefs. I find and conclude that Plaintiff failed to meet his burden to establish that he is entitled to a return of any part of the security deposit from Defendant as an item of actual damages under Section 362(k)(1).
Plaintiff also requests an award of damages for the emotional distress he suffered as caused by Defendant's violation of the automatic stay. Plaintiff did not quantify the amount of damages to redress the emotional distress he suffered as a component of his actual damages claim. Instead, he relies on his testimony at trial describing his emotional state resulting from the lockout. He requests that I use this evidence to quantify his emotional distress claim. Plaintiff's testimony consisted of the following: At the time of the lockout, Plaintiff and his wife were in poor health and had sole custody of four grandchildren, for whom they were receiving no child support. Plaintiff and his family were living solely on social security income at the time of the lockout and he was a month behind on the mortgage payment for his home. In addition, as a result of the lockout, Plaintiff lost all of his financial records and was forced to recreate them to prepare and file his tax returns. After the lockout, Plaintiff felt lost and very bad because he no longer had a source of income, he was out of money, and he had a family to support.
The Third Circuit has ruled that a debtor may recover emotional distress suffered as a result of a defendant's violation of the automatic stay as an element of actual damages under Section 362(k)(1). Lansaw, 853 F.3d at 668. The Third Circuit refused to adopt a bright line rule requiring the introduction of corroborating medical evidence to prove emotional harm and causation.[15] Instead, courts are *606 advised to address emotional distress on a case by case basis. The court noted that "at least where a stay violation is patently egregious, a claimant's credible testimony alone can be sufficient to support an award of emotional-distress damages." Id. at 669. The court further stated "[w]e are confident that courts ... can ensure that plaintiffs recover only for actual injury even in the absence of expert medical testimony ...." Id. quoting Bolden v. Se. Pa. Transp. Auth., 21 F.3d 29, 36 (3d Cir. 1994).
I find and conclude that Plaintiff has credibly and sufficiently established that he suffered some emotional distress at the time of the patently egregious lockout. My findings of financial damage renders corroborating medical evidence unnecessary. What I find lacking in Plaintiff's submission, however, is proof that all of the alleged emotional distress he was suffering was caused by Defendant's violation of the automatic stay. Instead, many of the stresses about which Plaintiff testified resulted from his overall life and financial difficulties: The poor health that he and his wife experienced prior to the lockout; raising four grandchildren on a limited income; and financial problems in his restaurant business prior to the lockout. The latter clearly led to the financial difficulties, including a default on his mortgage, which caused Plaintiff eventually to file his bankruptcy petition. Plaintiff established that he experienced emotional distress that was directly caused by Defendant's stay violation (1) when he lost the opportunity to sell the restaurant equipment at a time he desperately needed money to pay his mortgage and other living expenses and (2) when he lost all of his financial records, which forced him to spend substantial time recreating those records. To compensate Plaintiff for this more limited emotional distress, I award him $2,000 as actual damages.
Finally, Plaintiff requests attorneys' fees as part of his actual damages. Plaintiff's counsel did not precisely quantify the amount of attorneys' fees that might qualify as damages incurred by Plaintiff, other than to state that she is requesting a "reasonable attorneys' fee." Plaintiff's counsel states in her first brief, however, that she is not charging Plaintiff any amount for the time she spent on this adversary proceeding. She states in her brief that she should be compensated in the same amount that Defendant testified he had expended for his counsel to defend against this adversary proceeding.[16] Defendant had testified that his legal fees in this adversary proceeding were approximately $7,000.
"The language of Section 362(k)(1) provides for the compensation of 'actual damages.' Attorneys' fees are included in 'actual damages' and are not addressed as a separate category of damages." Dean v. Carr (In re Dean ), 490 B.R. 662, 670 (Bankr. M.D. Pa. 2013)quoting In re Thompson, 426 B.R. 759, 768 (Bankr. N.D. Ill. 2010). To recover attorneys' fees as an element of actual damages under Section 362(k)(1), many courts require that Plaintiff actually incur an obligation to pay attorneys' fees to counsel as a result of Defendant's stay violation.
Plaintiff's counsel approached her client's pauperism with nobility and did not charge her impecunious client additional *607 thousands of dollars. I will not follow the courts who require that counsel actually bill their clients without regard to their poverty. Our noble profession should look with approval at actions such as counsel's in this case. To the contrary, I follow the sound reasoning of the court in In re Parks, No. 07-18341, 2008 WL 2003163, at **7-8 (Bankr. N.D. Ohio, May 6, 2008). The Parks court explained:
Nor does counsel's agreement to represent the debtor pro bono mean that counsel cannot be awarded attorney's fees under fee-shifting statutes such as 11 U.S.C. § 362(k)(1). See Blanchard v. Bergeron, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (pro bono representation does not bar the award of a reasonable attorneys' fees); Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (attorneys' fees may not be reduced because the attorney conducted the litigation pro bono).
Id.2008 WL 2003163, supra, at *7.
Plaintiff's request for an award of attorneys' fees as a component of his actual damages claim is therefore cautiously[17] granted. But determining an amount presents a problem. Plaintiff's counsel failed to establish with clarity the amount of fees she is requesting or the amount of time she spent on this case. Her off-hand remark that her fees are probably on a par with Defendant's counsel fees of $7,000 misses the mark. I will, however, recognize from my experience and counsel's ball park number of $7,000 that a fee award in the amount of $3,500 is certainly reasonable. I shall therefore award Plaintiff $3,500 in attorneys' fees as part of his actual damage claim.
D. Plaintiff is entitled to an award of punitive damages in the amount of $5,000.
Section 362(k)(1) authorizes me to award punitive damages to a debtor to redress a stay violation in "appropriate circumstances." Lightfoot v. Borkon (In re Lightfoot ), 399 B.R. 141, 150 (Bankr. E.D. Pa. 2008). The following factors govern any decision to impose punitive damages for a stay violation: "(1) the nature of the [Defendant's] conduct; (2) the [Defendant's] ability to pay; (3) the [Defendant's] motives; and (4) any provocation by the debtor." Id. Punitive damages are a response to particularly egregious conduct and are, according to the Third Circuit, "reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978).
A court considering the imposition of punitive damages must be mindful of their purpose. "Punitive damages are damages, other than compensatory or nominal damages, awarded against a *608 person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."
Frankel v. Strayer (In re Frankel ), 391 B.R. 266, 275 (Bankr. M.D. Pa. 2008)quoting Restatement (Second) of Torts § 908 (1979).
The record in this case reflects no evidence regarding factor (2) (Defendant's ability to pay). Similarly, no evidence supports factor (4) (provocation by Plaintiff).
Factor (3) (Defendant's motive), however, is clear on its face - Defendant purposely prevented Plaintiff from getting into the Premises to claim his property (including financial records). Plaintiff's behavior was quite deliberate in withholding Plaintiff's property from him and immediately leasing the Premises to a third party. Defendant's further purposeful refusal to respond to the communication from Plaintiff's counsel adds to Defendant's egregious behavior.
Factor (1) is the nature of Defendant's conduct. I have seen a few purposeful stay violations, but I have seen fewer that are as bold and absolute as Defendant's behavior. The testimony established that Plaintiff had advised Defendant that he intended to surrender the Premises on January 31, 2015. Defendant travelled from New York to Lancaster specifically to seize possession of the Premises immediately, before January 31. When Defendant arrived, the restaurant was not operating. Defendant called a locksmith to gain entry to the restaurant and to change the locks. Four days was all that may have kept Defendant from lawfully moving into the Premises.
Defendant and his counsel also ignored the January 29, 2015 letter, advising that the lockout violated the automatic stay, which letter Plaintiff's counsel had sent immediately to Defendant's counsel. Plaintiff's counsel also requested that the parties reach some agreement regarding the liquidation of Plaintiff's personal property. Again, Defendant ignored and never responded to this letter. No evidence showed any attempt by Defendant to contact either Plaintiff or his counsel. Plaintiff went to the restaurant and knocked, wanting to enter to see Defendant and claim (or at least catalogue) his property. Defendant vaguely testified that either he or his attorney reached out to Plaintiff to return Plaintiff's personal property. I reject this testimony.[18] When asked why he never gave Plaintiff's personal property back to Plaintiff, Defendant testified that Plaintiff never set up a time to visit the Premises to remove his personal property. I reject this testimony.[19]
Defendant blatantly violated the automatic stay both when he enlisted the self-help measure of changing the locks to the Premises and when he failed to respond to Plaintiff's request for access to his personal property. Lansaw, 853 F.3d at 664, n.4. I find and conclude that Defendant's conduct is so patently and excessively egregious that it requires imposition of punitive damages to punish Defendant and thwart future violations of the stay. Punitive damages in the amount of $5,000 fulfill the four factors set forth by the court in Lightfoot, supra, 399 B.R. at 150, which I follow: (1.) The nature of Defendant's conduct was terribly willful, deliberate, and knowing; (2.) Defendant offered nothing to support any argument that he could not afford $5,000; (3.) Defendant's motives were clearly designed to thwart Plaintiff's efforts to rescue his personal property; and (4.) Plaintiff did nothing to provoke Defendant's conduct. I will award punitive damages *609 in favor of Plaintiff and against Defendant in the amount of $5,000.
IV. CONCLUSION
For the reasons set forth above, I find and conclude that Defendant violated the automatic stay of Section 362(a)(3) of the Bankruptcy Code, 11 U.S.C. § 362(a)(3), when he locked Plaintiff out of the Premises and when he failed to respond to Plaintiff's requests for access to the Premises to retrieve or, at least, to inventory his personal property and financial records. Plaintiff sustained actual damages as a result of Defendant's stay violation in the amount of $7,250 for the loss of property, $2,000 for emotional distress, and $3,500 for attorneys' fees. Finally, I conclude that imposition of punitive damages in the amount of $5,000 is appropriate. I will therefore enter an Order entering judgment on the Complaint in favor of Plaintiff and against Defendant in the aggregate amount of $17,750.
An appropriate Order, based on this Memorandum Opinion, follows.
ORDER
AND NOW, this 7 day of November, 2018, for the reasons set forth in the accompanying Opinion entered in this adversary proceeding of even date herewith,
IT IS HEREBY ORDERED that JUDGMENT ON THE COMPLAINT IS ENTERED IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT IN THE AMOUNT OF $17,750.

A new issue arose for the first time in Plaintiff's initial post-trial brief and led me to request supplemental briefs, which were also duly filed.

Plaintiff says that Defendant locked him out of the Premises on January 26, 2015; but Defendant says the lockout occurred on January 28, 2015. This discrepancy is unimportant - whether the lockout occurred on January 26 or January 28, 2015, is of no consequence to my decision.

Plaintiff testified that he went to the Premises on the day of the lockout and saw Defendant and several other people inside the Premises. He knocked on the door, but Defendant and the others in the Premises ignored him. He further testified that after the lockout, No Trespassing signs appeared on the Premises and within several weeks, a new restaurant began operating in the Premises.

Plaintiff's brief filed May 17, 2018, at p. 3.

Plaintiff's supplemental brief filed on July 1, 2018 at pp. 1-2.

Plaintiff's supplemental brief at p. 3.

Plaintiff's supplemental brief, at p. 2.

Exhibit P-1-A, admitted into evidence at trial.

Exhibit P-1-C.

Exhibit P-1-C.

The letter that Plaintiff's counsel sent to Defendant's counsel on January 29 concedes that the food remaining in the Premises was likely unusable. Exhibit P-1-D.

The testimony about the auction and auctioneer is therefore admissible but weak.

Both Plaintiff and Defendant have many years of experience operating restaurants. I therefore afford equal weight to their testimony regarding the value of the items listed on Exhibit P-1-C. Plaintiff says the property is worth $21,200 and Defendant says the property is worthless. I believe it is somewhere in between and that $7,250 constitutes the most likely value.

Defendant testified, without contradiction, that Plaintiff owes DFY approximately $13,000 for delinquent rent and utilities.

The Third Circuit also did not decide whether financial injury is a necessary predicate to recovery of emotional distress damages. Like Plaintiff in this case, the debtor in Lansaw had established financial injury as a result of the stay violation, so damages for emotional distress are therefore appropriate in this case. Lansaw, 853 F.3d at 668.

Plaintiff's first brief at p. 8.

Counsel has put her client's best interests ahead other own. I recognize that the majority standard could lead to counsel preparing an invoice for fees and giving it to the client. Then, with a wink and a nod, counsel might assure the client that it was not to be paid. The invoice could then be proffered to a court as the basis for a request for attorneys' fees. I do not want to contribute to the establishment of incentives for counsel to do just that. I can only hope that the integrity of the profession (if not the risk of severe sanctions) would guide counsel along the appropriate path.
I am also aware that my colleague in the Middle District of Pennsylvania, Honorable Bankruptcy Judge Mary France, considered and then rejected the Parks decision in her Dean v. Carr, supra, decision. This weighed heavily on me because of the high respect I have for Judge France. I must, however, decline to follow her approach in favor of the more appropriate reasoning adopted by the court in Parks.

Defendant's testimony in this respect was shifty and was not credible.

Defendant's testimony in this respect was also shifty and was also not credible.